Good afternoon, everyone. Good morning to you, Judge Aldiserk. Good morning. Good to see you. And we have... You're both very young, very young people on the bench. Well, if we're as young as you are, we'll be in good shape, that's for sure. We have Lazy Days today, and before we begin, obviously the state court has issued an opinion here, and we may give you a little more time. You can tell us what you think that means. And my guess is at the end of the argument, we'll ask you to brief that issue as well. But we'll wait until the end of argument and make that decision. Good. Mr. Russo? Thank you, Your Honor. May it please the Court, I have to start by apologizing. I have a very ill-timed sore throat. We've all been there. I hope my voice will carry to California, Your Honor. Would Your Honor like me to address the state court decision now? Yeah, why don't you? You have a situation? I'm sorry, just bring up the mic a little bit. Thank you very much. First of all, the status of the state court decision is findings and conclusions have been entered. My understanding from Florida counsel is that the court intends to make that a final judgment on June 27th. The only post-trial motions that I understand, and again I'm representing people involved in the Florida case, my understanding is that I4 has filed a motion to disqualify the judge after the judgment, which motion I'm told has been denied. I believe our side has filed some motion having to do with how the rent was paid during the period of the litigation. So we do not yet have a final judgment. My understanding is after it becomes final, then there is a 30-day period to initiate an appeal. With respect to this court's jurisdiction, I do not believe this court's jurisdiction is affected. I guess we could get into the metaphysics. I do not know what Florida race judicata law is as to when it's considered race judicata, but we, there's a reason. Isn't there a strange parallelism almost in the sense that if your position is that if a state court had jurisdiction and it did not issue an advisory opinion, then that's a matter of federal law, and a state court can't take that away from the federal bankruptcy court. Is that your position? I think once, if the bankruptcy court's order is affirmed and becomes a final judgment, then it is binding between these parties. I think in this case, you know, state courts do have jurisdiction to decide federal law issues when they have subject matter jurisdiction over case. And the reason, you know, we have this whole body of law on race to judgment and comedy and all this is because two courts can have jurisdiction at the same time. So at this moment, I think both courts have jurisdiction as a matter of subject matter jurisdiction. The race to judgment, at least at this stage, doesn't mean all that much because the same party is winning in each forum in terms of the substantive issue. State courts have, you know, how do you say this? State courts have authority to make wrong decisions. It's even been rumored that federal courts occasionally don't bet 1,000 percent. That is a different matter from, for example, if Florida had a state statute or a rule of decisional law that purported to address what happened in a bankruptcy assignment. You know, that would be preempted if it were any different from what the federal law is. This just happens to be a federal law issue that was presented in the course of state proceedings and the court decided it, as this court sometimes decides state law issues in diversity cases. Great. Fine. Then we'll ask your compatriot across the aisle what his view is on this. And why don't you go ahead with your argument here. Thank you, Your Honor. I don't know how we're doing time in terms of this extra issue that came up. I had hoped to reserve four minutes for rebuttal. Yes, we're going to start with 15 minutes again. This would happen all the time. I never get extra time after answering questions. The basic issue is subject matter jurisdiction of the bankruptcy court, whether it had jurisdiction to reopen the case to interpret and enforce its own order. Here the issue is a pure bankruptcy law question. In fact, there's section 365 F3 on an assignment that is made as part of a reorganization plan. You think Traveler's Indemnity decides it? Oh, I do, Your Honor. I mean, Traveler's Indemnity is, you know, it's 2009. There you have a settlement that's issued more than a decade before it's reopened. Then there are all these state court claims filed based on common law and state statutory theories against the insurers. An insurer who's one of the insurers involved in this very complicated settlement goes back to the bankruptcy court and says, I think your confirmation order bars this. Bankruptcy court says, I agree. Second circuit disagrees, but not on the jurisdictional issue. It disagrees in terms of interpreting the earlier orders. Supreme Court gets there and decides the bankruptcy court was right in reading the orders. But on the subject matter jurisdiction question, which, as Your Honors know, is never gratuitous in federal courts, that's never dicta. Supreme Court addresses subject matter jurisdictions. Clearly the bankruptcy court had it. It's got plainly has jurisdiction to interpret and enforce its prior order. I believe that's precisely what we have here. We have a confirmation order, permanent reorganization plan, under which a lease gets assigned as part of the overall deal. Is it an advisory order? It is not. And I think, you know, I think part of what gets us confusing is the difference between advisory as we sort of talk about it in terms of, I mean, this court may give an opinion, for example, and tell the district court, you really should take our advice on this issue or say that in some advisory, though, as a term of art means you have a hypothetical controversy. If you look at your court's opinions, which are like most of the federal system, you know, examples are the Inouye grand jury case that we cited, the Armstrong case. Inouye grand jury, I thought, expressed it well. Advisory opinion is a gratuitous expression of a legal opinion by court lacking either jurisdiction or a justiciable controversy. You know, and that gets into constitutional issues in the federal system. You know, in the Armstrong case in 1992, the court said it has to be real, has to be non-hypothetical, has to have an effect on the legal rights of the litigants in a concrete way, and in a fact context that permits adversarial proceedings in the decision. So this is a real, live dispute. It's absolutely pending what is the effect of what happened under the bankruptcy law in this order. It's clearly been litigated adversarially. The fact that. Counsel, counsel, this is Judge Alderson with a question. Putting aside the aquarium case, is there any other case where a bankruptcy court opened a final confirmation judgment at the request of a former debtor who was a litigant in that state court? Is there any other precedent? I'm not aware of that. You know, I'm trying to think, Your Honor, we cited several cases in our opinion, I'm sorry, in our briefing, where courts have reopened, have dealt with 365 issues while state litigation is pending. There was a recent case in this circuit. I asked that question because I couldn't find any. That makes me feel better. We agree with you in this case. We will be making some new law. I think you will be applying settled law in a factual situation that may not have arisen in precisely this context. Whether it's, I think it is. I'm saying that because what we have here is an issue of comedy. Here we have a judge, a bankruptcy judge, who has been asked by one of the litigants in the state proceeding to write an opinion. To open up and write an opinion. Now, the question, in my judgment, is that there's a serious question of comedy. If I were a state judge, and I have been a state judge, and I know Judge Sirica has been a state judge, and suddenly the federal court came in and interfered with my proceeding, I would be screaming, the feds are at it again. They're cramping on federalism. Your Honor, I think that's a good question. Let me respond to it in a couple of ways. First of all, let me distinguish. And the second part, I want to get to some of the precise factual situation in this case. First, comedy is, of course, a different concept from subject matter jurisdiction. Comedy doesn't come into play really unless a court has subject matter jurisdiction. It declines to exercise it. What was the timing of when these suits happened? This is not a situation where a case was long pending in a state court, and a litigant wasn't happy there and said, I'm going to run over and find a better forum. All these suits happened virtually simultaneously. I-4 instituted the state court action at about the same time we were going to the bankruptcy court. I think it's all around June of whatever the year is. And at that point, my understanding, and I've represented our brief, our counsel hadn't even seen a copy of the state court suit. The same day that we filed the federal bankruptcy proceeding, we then filed protecting our rights, an action in the state court so that, you know, this is what lawyers do when we're counseling clients. You don't know for sure where it's going to be decided, so you have to cover it. But it's not a situation, Your Honor, where a state court had long had jurisdiction over a case, and then all of a sudden a federal court interfered. These proceedings were instituted virtually simultaneously. If the court has further questions on advisory opinion, I can talk briefly about the Martins Aquarium case if the court would wish. Otherwise, I can move on. That's enough. You can move on. Okay, thank you, Your Honor. There's been an argument made that I do not believe was presented below. It's not saying it's improper. You can raise alternative grounds for affirmance, but it's a waiver. But we saw in the briefing now a long argument about Stern v. Marshall, one of the nice things about the appellate business, but I think whatever side of the bar you're on, you need to know about a lot of things that you didn't know before you started on a case. And I gather Stern v. Marshall is now sort of this huge case in the bankruptcy field in which the Supreme Court held that federal courts, notwithstanding that the bankruptcy code may technically extend jurisdiction, do not have jurisdiction to resolve purely state law disputes. Stern v. Marshall, of course, is the Anna Nicole Smith case. What you have there is a defamation claim on the one hand by Anna Nicole Smith and her stepson. Her stepson brings a case for defamation in the bankruptcy proceeding. She counterclaims, claiming that he interfered with her expectation of an inheritance from her husband. And all this gets resolved. What the Supreme Court said is, look, that is purely a state law issue. Non-Article III judges cannot constitutionally exercise jurisdiction over these things simply because the bankruptcy court statute may technically extend jurisdiction. In the Northern Pipeline case before that, it was another case where you had technically related to the bankruptcy proceeding because it involved different parties in the bankruptcy proceeding or claimants, which had breach of contract, misrepresentation, duress claims. The Supreme Court said, no, those are state law claims, and you don't have jurisdiction to decide those. Then there's Grand Financiera, which was the third case discussed by our colleagues on the other side, which involved this, and I confess I don't totally understand it, involved this public rights exception to when you don't have jurisdiction over state law claims, which seem to go on and on and on and involve a lot of metaphysics. But the point is, it doesn't arise unless, first of all, you're dealing with a state law claim. This is not a state law issue. This is the effect of a bankruptcy provision on what happens to an assignment in the course of a bankruptcy. And what it says, it doesn't destroy the anti-assignment clause. It just says the anti-assignment clause doesn't operate in that assignment that occurs as part of the bankruptcy proceeding, so that the person who's the debtor's assignee emerges from the proceeding with the same rights that the debtor had. Are you saying, counsel, that in the Florida case, it was not decided on the basis of federal law? I'm not saying that, Your Honor. This issue was decided on the basis of federal law in the Florida case. Pardon? The Florida State Court had an issue of federal law presented to it, which it resolved. It resolved it in our favor, resolved it the same way that the bankruptcy court resolved it here. This was the effect of the bankruptcy court provision. And the Florida court had subject matter jurisdiction to do so. Right. Even if we assume that both courts have jurisdiction, as a practical matter, it doesn't make a lot of sense to be litigating both cases in 2-4, correct? I think that's why we have rules about comedy and why this issue arises a lot. But we also have a whole body of law about race to judgment because this happens a lot. Was there an effort to stay the Florida Act? It is my understanding that we requested the Florida judge to await what the bankruptcy court would do because it was purely an issue of bankruptcy law. I'm sorry. Say that again? We requested, Lazy Days requested, the Florida court to wait for the bankruptcy court to decide this issue about the meaning of its own order in federal bankruptcy law, and the Florida state court declined to do so. Which, whatever the comedy balance might have been, the Florida court decided, no, I'm not going to do that. That was its call. But there was an effort. And the bankruptcy court adjudicated it, obviously. It adjudicated the matter well before the Florida state court. The Florida state court decision came in the last month. It still hasn't even issued a final judgment. It has not. We were in the situation where we didn't want you not to know about this development, but we were waiting until argument week so that we could give you the most up-to-date report. But this is where it stands right now. But, you know, basically, as I said, the idea that this is a Stern v. Marshall case, I mean, it's just mistaken. There is no state law issue here in Florida, as I said before. Florida doesn't have a statutory provision. Florida doesn't have, you know, a body of court-created case law that says, here is Florida law on what happens when an assignment happens. Well, there are state law issues, but they're not 365 F3 issues. Correct. There are all kinds of state law issues. But the efficacy of the assignment comes down to what 365 F3 means. I think that's purely a federal law issue. The only other thing I would say briefly before turning it over to my opposing counsel, who will correct me, is you can write things in a way that you avoid these provisions. Parties can agree this provision of the bankruptcy code won't apply in this particular deal. It actually happened in this case. There's another provision where you can agree where the bankruptcy law provides that the debtor won't be liable for post-assignment for breaches. As part of the deal here, the parties negotiated that that wouldn't apply, and that's in the plan. But they didn't do it on 365 F3. They didn't do anything of the sort. So it shows they know how to do it, and parties know how to do it. One of the cases cited as an example by my colleagues on the other side was this Monroeville Dodge, where the parties agreed that a provision, I think prohibiting set-offs, would not apply. My understanding wasn't their quarrel with the initial plan. It was they're sort of getting whipsawed that there was a side agreement or an agreement that occurred afterwards that the assignee is getting penalized with, in contravention of what all the parties to the agreement understood to be the deal. Isn't that really what their argument is? I think there are arguments like that. I think that the bankruptcy court, which approved this plan and reorganization, didn't think anything of the sort, and that's why it ruled this way. On those kinds of issues, the Florida court is obviously just a long opinion, saying it doesn't credit any of that. So those are issues you could get into. But the bankruptcy court said no, and we think it's correct, and it's got authority to interpret and enforce its own order. So I have this question. We have this very fine opinion by our colleague Judge Sirica in Inouye Resorts. What is the sufficiently close nexus between the dispute and the bankruptcy plan or proceeding for the bankruptcy court to take jurisdiction, even if we say it did have jurisdiction? Well, I think, Your Honor. What was that? I don't think that we even get to. Your Honor is asking great questions, and I appreciate your patience in giving two-part answers. First, I think we do not even get to close nexus analysis. Close nexus analysis, I believe, applies when it's not a core jurisdictional matter, but you're trying to decide if it's close enough to the bankruptcy court issue that the bankruptcy court, you know, properly exercise discretion. Here it's core jurisdiction. This involves the confirmation order, the plan of reorganization, and what it means. So we don't even get to close nexus. If we look, then, at what close nexus is, if you look at the cases that Judge Sirica cited in resorts, you have this case out of Montana where there's a sufficiently close nexus because the party claims that one deal where it was going to get preference from the state of Montana on bidding, that the state of Montana wasn't involving that, wasn't honoring that. That was cited in Judge Sirica's opinion as sufficiently close nexus as being instructive. There was another case, and I will address it on rebuttal because I confess freely that it is escaping me right now, but I know there's another case that was also far more attenuated than this. But, again, close nexus analysis is interesting, but the court really does not need to address it. This is core jurisdiction. I thank your honors. Let me just hold on a second. You touched on the argument from the other side that this matter was contracted around, and as I understand it, the LDRV's position is that the provision extinguishing the purchase option is unenforceable because it essentially stands in the same shoes as the debtor. It does. It stands in the same shoes as the debtor. And if it were to transfer it to a third party, then the option. It would be subject, the current possessor's right, the current tenant's right is subject to the anti-assignment provision. Of course it is. All the bankruptcy code does is say it emerges through bankruptcy without being extinguished by any transfer that happens as part of the bankruptcy reorganization. Judge Aldisert, any further questions? No, I think I have bothered distinguished counsel enough. I am going to tell my grandchildren that I was called distinguished by Judge Aldisert. Thank you, sir. Thank you, Mr. Ristovan. Thank you, Judge Sirica. My name is Craig Martin. If it may please the court, I'm appearing on behalf of I4 Landholding Company. Good afternoon. You might want to pull that down just a touch. Okay, thank you. Would you like for me to address the impact of the state court? Yes, we'll give you some time for that as well. Why don't you hold off on the timing? Certainly, and thank you for allowing me to address it initially. Our view of the state court decision is that it is not relevant to this argument today, and it was inappropriate to have been introduced because it is not a final judgment. The substance of the opinion itself essentially adopts the reasoning of the bankruptcy court, and in our view, if it shows anything, it shows the exact kind of prejudice and harm that we predicted would happen. In the bankruptcy court and in the district court by the issuance of an advisory opinion. As a Florida state court judge presiding over a lease dispute, the opinion from a distinguished bankruptcy judge in one of the most prominent bankruptcy jurisdictions in the country, it's no surprise to us that he's given it weight and essentially followed it, and that's exactly what we feared. But you won in the district court. Couldn't a Florida judge equally have followed what the district judge did? Certainly, and the reason we filed our letter that we did in response to the 28J letter that Mr. Rusthoven filed is that in our view, there was inappropriate use of the bankruptcy court's opinion in closing arguments and in closing briefs. We did not feel that that was appropriate 28J material to submit into this record and made the decision not to submit it. However, if the court is going to consider the decision that the Florida state court entered, it's our view that the court should have the full picture, and that's why in that letter we asked for the opportunity for supplemental briefing. But how could the Florida court's decision impact our review of this case? Maybe I'm not giving enough credence to our distinguished colleagues on the Florida state court, but I'm at a loss to understand why I would credit a Florida state court judge or any other state court judge's interpretation of the bankruptcy code provision. That's why we're here. That's what we do. And when you asked your question about parallelism, Mr. Rusthoven, the note that I made to myself is that this court's decision on federal law under the Constitution and the Supremacy Clause is binding on the Florida court, but the Florida court's decision on the meaning of what happened in the bankruptcy court is not binding on this court. Precisely. So we should just focus on our case. My view would be that you don't need to consider what happened in Florida, and you can focus on the briefs as submitted and the argument presented today. And that would be true if the Florida court had ruled your way as well. Yes. It has to be. I mean, logically it has to be. Now, my client might want me to say something differently to that question. Well, you may want an appeal. Exactly. And there are post-trial issues that are going on that Mr. Rusthoven touched on regarding whether a new trial should be in front of a different judge. I don't want to go into the substance of that unless the court wants to hear about it, because it's a... We have enough here this morning. So looking at this case, how can you argue that a bankruptcy court's interpretation of the application of 11 U.S.C. 365 F3 is not a case arising under the bankruptcy code? I just cited a provision of the bankruptcy code, which sure seems to suggest that the case arises under the bankruptcy code, does it not? Before I address that, Judge Shurka, do you want to start my 15 minutes, because I don't want to get into the substance of the argument. I don't want to take advantage of the court's... That may have been one of the more professional acts we've seen here in a while. Kudos to counsel for that. Thank you. I am an officer of the court. In our view, that's the exact question. This case is about whether parties in a prepackaged bankruptcy case that agree to settle their disputes and present them to the bankruptcy court can have that settlement agreement as approved by the court be binding, or whether the bankruptcy court has jurisdiction to come back and revisit it later. The prepackaged, it shouldn't make any difference whether this was a prepackaged, should it? You mentioned this, but I'm trying to figure out why that's significant. I think it's... In the district court opinion, Judge Andrews has a footnote where he cites this court's decision in InSilco Technologies, where he talks about... A confirmation order after there's been a long hearing and a trial. Here, we had 30 days in the bankruptcy case. The confirmation hearing itself was 18 minutes. I think some of the standard of review issues that we raise also touch on the fact that when you have a lower court that interprets an order that's ambiguous, looking at what was litigated in front of it and what it intended when it entered that order, that might be a different review by this court than, essentially, a standard of review. It's a stipulated order, which is what Judge Andrews found this confirmation order was more akin to. The parties agreed on a variety of documents, showed up in the bankruptcy court, said, we've all agreed and we'd like for you to approve this, and the judge approved it. Now, I don't mean to minimize what the bankruptcy court does, certainly. There's no suggestion that the bankruptcy court didn't review the material and do its job and approve the confirmation order. Well, and more importantly, if the parties had snookered the bankruptcy judge somehow, the bankruptcy judge could have rectified that when the case was brought back before that judge. That's a fair comment. I don't disagree with that, but I think if you look at this record, there is no reference of 365F3 anywhere in these proceedings. My colleague mentioned that 365K, which is a provision of the bankruptcy code that says when a debtor assigns a contract, it's no longer bound by the provisions of the contract. If you look at paragraph 25 of the confirmation order, 365K is not mentioned. What is mentioned is that the settlement agreement is assumed, and that the assigning debtor will remain liable on the assigned lease. So the parties didn't mention 365K, and yet the settlement agreement and the order, as our opponents have conceded, were contracted around. We believe and submit to this court that under different language in the settlement agreement, we simply contracted around section 365F3. There's nothing to suggest that the parties here can't do that, and there's nothing to suggest that that's not what they did. And in fact, Judge Hardiman, you asked a question that if this tenant was now to assign the lease in violation of section 13.1, would that extinguish the purchase option, and the answer was yes. So I think it's clear from this record that the lease and all of the terms of the lease were assigned. And so what does that mean? That means when the tenant elected to exercise the purchase option, it was well within the landlord's right to submit that there had not been a section 13.2 assignment. And in the bankruptcy record, there are no facts that suggest that 13.2 was complied with. If you look at this lease, it's a little bit complicated because there's Article 33.3, which says, and I think both the bankruptcy court and the district court did a fair job of going through these provisions, but 33.3 says so long as there's not an assignment, provided there's been an assignment under 13.2 and the parties are not in default, then you can exercise the purchase option. What the bankruptcy court did is say, when I approve this lease, 13.1 is written out of the contract. So we have a confirmation order that approves a settlement agreement, a settlement agreement that says all terms survive. That's where we leave it at confirmation. But don't agreements in all these confirmation orders come with the proviso or the understanding that they're subject to the operation of federal bankruptcy law, unless stated otherwise? I mean, the default position, I posit for your response, the default position can't be that we put all these things in the document to the exclusion of federal bankruptcy law. Wouldn't the position be that they're all put in there subject to the bankruptcy law unless explicitly stated otherwise and approved by the federal bankruptcy judge? I think that's a very good question. And in my practice, at least, we oftentimes state what you just said in a contract. For example, if we have a bidder that wants to buy assets and we're representing a debtor, we'll actually write into the contract with that bidder, this contract has to be approved by the bankruptcy court. Or we retain our fiduciary obligations, and if the higher bid comes along, we're not going to be bound to not sell it to that party. But I submit that if the answer to your question is yes, then at least with respect to prepackaged bankruptcy cases, the policy implications are great. Namely, where you have a... All right. Let me just stop you for a minute, because I don't want to get to the policy argument until we deal with the legal argument. Or maybe you're saying you only have a policy argument. Are you suggesting to us that for non-prepackaged bankruptcies, they win, but this case is different because it's a prepackaged bankruptcy and you want us to plow some new ground in that regard? I don't think I'm asking you to plow some new ground. I think I was going to make a distinction between a prepackaged case and a non-prepackaged case. But to be responsive to your question, I'll set that aside. I want you to do that. I just want you to get up... I want to answer your direct question, which is, isn't it always the case that in an agreement, if you don't expressly write that you're contradicting the bankruptcy code, that the bankruptcy code always trumps the agreement? And I would admit that that is not the case, because the bankruptcy code, while it has many provisions that govern and are self-executing, also requires court approval of various agreements. So it's not unusual in bankruptcy practice, which is what happened here, to have two parties settle a dispute or litigation or an event that occurs outside of the bankruptcy process. But because one party to that agreement is in bankruptcy, that they come to the bankruptcy court and they get it from the bankruptcy community, or that it is the substantive law that if you don't write in that contract, we are expressly writing out of this agreement section X, Y, and Z of the bankruptcy code, that you can't achieve that through the language that you actually write. And in fact, the 365K example is the perfect example. 365K, I've looked at the record three times, and I can't even find it mentioned in the plan, the confirmation order, the settlement agreement. So the language of the settlement agreement said all provisions will survive of the lease. That is directly contrary to 365K. The confirmation order says the lease is assumed and the lease remains binding. That's directly in contradiction to 365K. But neither the settling parties nor the bankruptcy... Counsel, I know that you're answering questions presented to you, but I'm waiting for you to get into the issues you raised in your brief on the question of jurisdiction and the question of whether there was a nexus in exercising jurisdiction. Yes, I'll be happy to address those, Judge Alderson, and thank you. Well, I'll tell you, I would like to hear your position on that, both on jurisdiction and also on the nexus. Yes, we argued jurisdiction from two different perspectives. One is the constitutional perspective. As Judge Alderson mentioned, Judge Sirica has written the NRA Resorts International, which is one of the leading cases on post-confirmation jurisdiction, and it says that after confirmation of a bankruptcy plan, jurisdiction narrows with respect to a bankruptcy case. But as I read that case, the judge simply said that you still have to find that close circuit decision in Packhor versus Higgins, which says there must be some type of effect on the administration of the bankruptcy case. It is our view here that since this case has been confirmed and all of the shares in the new reorganized entity have been distributed, that the resolution of this dispute did not affect a creditor, it did not affect the administration of the estate, it had no bearing on any of the core type of administrative issues that typically arise in a bankruptcy case. And in fact, Judge Hardiman asked me at the beginning, and I didn't get a chance to answer if this was a core proceeding, and I think my opponent suggested that it is a core proceeding. And that leads me into Stern versus Marshall, where Chief Justice Roberts wrote a wonderful opinion on statutory in that situation that under the statute as written, the counterclaim that was filed was a core proceeding under the statute. He then turned to the next section of his decision and said, but Congress didn't have the authority under the Constitution to delegate the decision of that dispute to the bankruptcy court. So I would submit that the jurisdictional issues here, as properly analyzed, and as simply analyzed, are that under the facts of the record before us, there simply is not a close nexus such that the Resorts International case has been satisfied. And I want to be clear that I'm not asking for some kind of per se rule or asking for something unique that there could never be jurisdiction in a post-conference situation. I'm simply asking the court to do what it's done in both Resorts International, Armstrong World Industries, and the Shenango cases, and say that the jurisdictional analysis is multifaceted. It's one of degree. It requires an understanding of the facts and circumstances. And that under these facts and circumstances, there was not statutory jurisdiction. And under Stern v. Marshall, there was not constitutional jurisdiction. That leads me to answer two questions that... I'm sorry, did you... No, go ahead. Finish. Finish now. I was just simply going to turn to the Travelers v. Bailey decision because I think, Judge Sirica, you ask if that answers the question in the other argument. And I say that that does not answer the question because Travelers v. Bailey deals with whether the discharge and injunctive provisions of a confirmed order, whether the bankruptcy court could revisit those issues. And as we analyzed in our briefing, the 30-year history of the 1978 Bankruptcy Code, every time it's made it up to the United States Supreme Court, the United States Supreme Court has reminded all of us that practice bankruptcy law, that bankruptcy jurisdiction is not unending, and that it has limits, and that it has... the bankruptcy court can only deal with public rights, discharge injunctions, and related type issues that are core to the heart of bankruptcy in this country. Now, when you have a Chapter 11 case or a Chapter 7 case, you then do have the authority under 1334 to deal with cases that arise in or arise under the Bankruptcy Code. But I submit that since this bankruptcy case had been closed for 15 months, that it did not arise in a bankruptcy case, and that it did not arise under the Bankruptcy Code. Can it be argued that Travelers is not really an interpretation of a discharge? I mean, the question there was whether the order precluded claims against the debtor's insurer, so it was not the typical kind of discharge case. Yes, and I think that's a fair question. As I understand the record of that case, there was a lot of argument and a lot of evidence taken at the bankruptcy court level about whether Travelers really would have funded the bankruptcy plan with, I think it was several hundred million dollars, if it had not received the discharge. And the bankruptcy court found that it wouldn't have, and that therefore the discharge injunction was, I think it was called the cornerstone of the bankruptcy plan. Why can't it be said here that the bankruptcy court just adjudicated one issue relating to the dispute before it? They were, the court was acting under federal bankruptcy law, not under state law in this circumstance. Right, and I think my answer to that would be, if that's what the bankruptcy court was doing, and if it was using powers bestowed upon it by Travelers v. Bailey, that it needed to develop a better record to determine whether this dispute was really the key to the plan. The bankruptcy court's decision actually said that this was a key aspect of the bankruptcy judge the second time we got back in front of him, to Judge Hardeman's whipsaw point. You know, we just got the decision with a statement that this was a key issue. The record reflects that the key issue was 138 million dollars worth of bond debt that couldn't be paid on time. And what's not in the record is whether the parties would have still assigned the lease had the purchase option been expressly terminated, or what would have happened and what would have been the economic impact on this debtor if the parties had had to litigate a 365-F3 issue in front of the bankruptcy court. Timing was important here. Assuming there was... I would just want to know if you will help me out. Why wasn't there a sufficiently close nexus in this particular case? I guess the most direct way I can answer that is to remind Your Honor that the movement in the bankruptcy court is a separate and new legal entity. The reorganized debtors are not the debtors. The debtors and the landlord entered into a settlement agreement which the bankruptcy court approved. Fifteen months later, a new party that succeeded to the lease decided that for whatever reason they wanted to exercise a purchase option. And when we informed them that the way in which the settlement agreement in bankruptcy had occurred, the purchase option was terminated, having dislike with that, they rushed back to the bankruptcy court and asked the judge to clarify for two non-debtors a dispute that resulted in no monies being distributed to creditors and had no impact upon the administration of the bankruptcy case. And for that reason, we submit there was no jurisdiction. My red light is on, so I hate to keep going unless I'm instructed. I just want to make sure I understand your position fully. You're saying that the purchase option was extinguished in conjunction with the planned confirmation document, the settlement agreement. Is that right? I think what I would more clearly say is that the full lease was assigned with all its terms and that when this party seeks to exercise the purchase option, the way to decide that is to look at 33.3, 13.1, and 13.2. And that full assignment was blessed by order of the bankruptcy court. We note in the factual background of our briefing, and I won't go through due to the time, but there was actually a complicated structure of assignments and different corporate entities that were created. And one of the conditions to closing was a tax opinion saying this was all going to work in a way that was beneficial to the new owners. All of those documents are in what's called the planned supplement in the record, but the final documents were never before the bankruptcy court. So we don't know exactly how all of the transfers occurred. But in general, the answer to your question is yes, the bankruptcy court approved the plan that set up this structure. But there were multiple assignments and assumptions and the settlement agreement only deals with part of that. And then 15 months later or some period later, question was raised as to whether or not Section 365 F3 of the bankruptcy code altered that understanding in any way. I think that's fair. And the way I would answer that is to say, and then the bankruptcy court decided that when he approved that transaction initially, he didn't really mean what he said. And that although all provisions survived, really Section 13.1 of the lease didn't survive. And he wrote it out. Let's assume for a minute the judge was wrong. It's his job to make that decision, right? I mean, it's axiomatic that judges have the jurisdiction power to interpret their own orders, is it not? Maybe it's a bad analogy, but I'm thinking back to the time I was a trial judge. And from time to time after I thought a case was closed and it had been put away in the electronic cabinet, oh no, they're back. And you know, your job is to... Let me give you one analogy that might make it a little bit easier to understand my position. This plan and disclosure statement also disclosed an exit financing facility between the reorganized debtors and Bank of America. If what you're asking me is that the court always has the power to interpret the confirmation order, is the true answer to the question posed today that if next week this borrower has a dispute with the Bank of America under that exit facility, the proper forum to adjudicate that please tell us what you really meant? It's kind of nice you get to ask me the question. I'll indulge you. I think the answer is if and only if that dispute arises under a provision of the bankruptcy code. If that dispute involves the statute of limitations in New York, if it involves New Jersey consumer law, et cetera, then you don't have a federal jurisdictional hook. But if that dispute, if one party can credibly walk into court and say, we have a dispute here and I think 11 USC fill in the blank has something to say about this dispute, it seems that that means you're in the court. You're in the ballgame, so to speak, within the jurisdiction of the bankruptcy court. It doesn't mean the bankruptcy court acts correctly, doesn't get it done wrong, et cetera, but as a jurisdictional matter, how are you not properly there? I would concede your point for an order, but remember here we have a settlement agreement. This resolution, this case starts with the need for this debtor to settle other litigation under the lease and entering into a settlement agreement that said certain things are going to unfold in the bankruptcy case. It's not that we just have an order here. This is not an adversary proceeding where there was an entry of judgment and interest was to compound annually, but the judge forgot to put compound and they came back and said, did you really mean to say compound annually? This is a complicated series of agreements that led to a lease, an interest in property that the parties are now have a dispute over, which is a classic state law type dispute. What does a lease mean? There's plenty of cases that say a plan, once confirmed, is merely a contract between a debtor and its creditors and that state courts are fully competent to interpret those contracts. Again, returning to Resorts International and the questions that Judge Allister was asking me, there is a question of degree. I'm not suggesting that the answer to your question is there's never jurisdiction to interpret a post-confirmation order. I'm suggesting that under these facts, with the settlement agreement, that's really what's being interpreted, that it was inappropriate here. Good. Any further questions? Judge Allister? I have none. Thank you. Thank you very much, Mr. Martin. Mr. Rusthoven. Until that very last statement, counsel did not even attempt to identify a single state law issue that supposedly was presented to the bankruptcy court. And in that response, he sought to say that really what was at issue in the bankruptcy court was interpretation of a contract under state law. No. What was at issue in the bankruptcy court was, as a matter of federal bankruptcy law, self-executing provision. Did the assignments that occurred as part of the bankruptcy mean that the purchase option was then gone? Counsel is kind of respectfully begging the question here. Yes, the lease was assumed in all its parts. One of those parts was the purchase option. The purchase option is still there and still subject to conditions. It exists. The only issue is, when we're in this bankruptcy and the assignments occur as part of this reorganization plan, does the landlord consent provision operate to defeat the purchase option in that bankruptcy transaction? That's the federal issue. There was no provision. It just seems you have to concede, Counselor, don't you, that this should have been dealt with before confirmation. I don't think anybody thought it was an issue before confirmation or during confirmation. I don't think anybody had a doubt that the effect of, I'm sorry, Your Honor, I don't mean to interrupt you. If it were a non-issue, it should have been said the other way, then. I think what we really have here, no, I don't think parties have to recite, and I think it would be an extraordinary rule of federal jurisprudence that would soon be regretted, to have to recite in a confirmation order, unless otherwise stated herein, all the provisions, self-executing provisions of the Bankruptcy Code apply. I don't think parties have to recite, by the way, Section 365.3 applies here. Nothing, nothing in this bankruptcy plan or in the confirmation order or in the settlement says, upon the assignments that occur pursuant to this reorganization plan, the purchase option is extinguished. There's nothing like that. You just have assignments taking place as part of, and you have people emerging, the reorganized debtors, and under federal bankruptcy law, they emerge with the same rights. So your argument is that if it were contracted around, it would have been specifically identified? Oh, my gosh, yes. And I would also like to point out one thing. The suggestion that there's nothing here that suggests 13.2 was complied with, I'm sorry. The Bankruptcy Court found, in interpreting its own order and in looking at the proceedings, which it appeared to be quite familiar, if you read the order, the landlord consented to the assignment as part of the reorganization plan. So it's not like they didn't know or didn't consent. This is, when do disputes arise? Disputes arise when there's lots of money on the line. This dispute arose after the fact, because all of a sudden, exercising the purchase option would be beneficial to Lazy Days and not to I-4. It's then that I-4 comes up with this argument after the fact that, oh, no, no, no, because it was assigned during the bankruptcy, therefore, the purchase option was extinguished. No one thought of that before. No one would have thought that the self-executing provision of the Bankruptcy Code is a matter of federal policy so that debtors have the ability to transfer exactly what they possess. That's the purpose of this provision. No one would have thought that that didn't apply, and the Bankruptcy Court had no problem dealing with it. I also want to make a couple of points. First of all, Judge Alastair, I have not forgotten your problem, but I have had a chance to look up the other decision that was referenced by Judge Skarica in Resorts, and it is the Bergstrom or Dalkin-Shield claimant's case, in which the court found there was a sufficiently close nexus for the Bankruptcy Court to go back and look at provisions about what percentage of attorney's fees you might get as part of a claim. That was found to be a sufficiently close nexus. Here we have something that involves the meaning of the confirmation order itself, the meaning of the plan itself. The last thing, and I appreciate the court's, I just have two quick points. One, all this stuff about, I don't think the court wants to get into any rule of law where all of a sudden Bankruptcy Courts, what they do, and their discretion and authority depends on whether it was a prepack or not. My God, that will open up. But the main point even here, that would at most go to the weight that you assign to the interpretation of the order. It would not go to the jurisdiction to reopen the case to consider and enforce its own order and plan, which the Supreme Court said in Travelers is right there. Lastly, on the Florida decision, we were not citing that, and I am not citing that as authority that is binding on this court. Our view of it was there was a related case proceeding going on, and there had been a significant development in that case. We thought the court should be aware of it. We understand your position. We thank counsel for excellent argument here and excellent briefing as well. We'll decide whether we want to hear or whether we want to see any further briefing on the Florida case. And if we do, we'll notify you immediately and give you some time to do that. Again, with our thanks. Judge Serega, could we have counsel prepare a transcript of this very fine oral argument? Absolutely, absolutely. I want to third that. I think this was one of the most helpful and well-done oral arguments I can remember. So thank you to counsel. We'd ask you to share the costs on this and check with the clerk's office before you leave, and we'll tell you how to do that. Good. Take the matter under advisement. Thank you. Judge Aldous, we will give you a call. Thank you.